UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Republic Franklin Ins. Co., :
:
    Plaintiff, :
:
v. : Case No. 3:15-cv-1102 (RNC)
:
Rafael Quiroz, :
New Penn Financial, LLC :
d/b/a Shellpoint Mortgage :
Servicing, :
:
    Defendants. :

RULING AND ORDER

Plaintiff Republic Franklin Insurance Company ("Republic Franklin") brings this diversity case seeking a declaration that it owes no coverage to defendants Raphael Quiroz and his mortgagee, New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), under a homeowner's policy covering residential property owned by Mr. Quiroz in East Hartford ("the property"), which has been damaged by fire. Republic Franklin contends that the policy has been properly rescinded based on a material misrepresentation in the policy application attributable to either Mr. Quiros or his agent, and that language in an endorsement to the policy is properly construed as an open mortgage clause such that Shellpoint has no greater right to coverage than the insured. In response to the complaint, Mr. Quiroz has filed counterclaims for breach of contract, reformation and negligence. Plaintiff and Shellpoint have moved

1

for summary judgment (ECF Nos. 53, 55). After considering the parties' submissions, I conclude that genuine issues of material fact are presented with regard to whether the misrepresentation in the policy application was knowingly made. I also conclude that Shellpoint has failed to demonstrate that it is entitled to judgment as a matter of law. Accordingly, both motions are denied.

I.

The materials submitted by the parties establish the following facts for purposes of deciding the motions for summary judgment. Mr. Quiroz bought the property some time prior to 2010. At various times prior to 2014, he obtained homeowner's insurance policies for the property using Antonio Jimenez as his insurance agent. Mr. Jiminez used other agents who had binding authority with insurance companies to assist him in placing coverage for his customers.

In October 2014, Mr. Quiroz approached Mr. Jimenez about applying for a policy for the property. Mr. Jimenez contacted Angel Rivera, who had an agency relationship with the plaintiff. Mr. Jimenez prepared an application for Mr. Quiroz to obtain coverage for the property through the plaintiff and forwarded it to Mr. Rivera. The application was not signed.

The insurance policy application was uploaded to the plaintiff's server, which checks information in an application to

determine whether a risk meets underwriting guidelines. The application submitted by Mr. Jiminez on behalf of Mr. Quiroz stated that the property was owner occupied. In fact, Mr. Quiroz did not reside at the property and rented the property to a tenant.

The application made it appear that the property qualified for homeowner's insurance coverage as an owner-occupied residence and plaintiff issued the policy on that basis. Plaintiff was unaware that the property was not owner occupied. Had it known, it would not have issued the policy. After the fire loss occurred at the property, Mr. Jiminez prevailed upon Mr. Quiroz to sign the policy application. Following an investigation, plaintiff rescinded the policy based on the misrepresentation in the application regarding owner occupancy.

## II.

In Connecticut, to rescind an insurance policy on the basis of a misrepresentation, an insurer must prove: "(1) a misrepresentation (or untrue statement) by the plaintiff which was (2) knowingly made and (3) material to defendant's decision whether to insure." Pinette v. Assurance Co. of Am., 52 F.3d 407, 409 (2d Cir. 1995) (citing State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co., 145 A. 565, 567 (Conn. 1929)).[1] Here, all

---

[1] These principles were articulated by appellate courts in life insurance cases, see Pinette, 52 F.3d at 409, and automobile insurance cases, see Middlesex Mut. Assur. Co. v. Walsh, 590 A.2d

3

three elements are contested by Quiroz and Shellpoint. I think only the second is subject to a genuine dispute.

Shellpoint argues that Republic Franklin's failure to obtain the insured's signature on the application before issuing coverage precludes it from rescinding on the basis of the alleged misrepresentation. In the absence of a signature, Shellpoint argues, there was no misrepresentation. That Quiroz did not sign the application before coverage issued might bar Republic Franklin from claiming reliance on the form. See 6 Couch on Ins. § 85:60 ("False answers stated without the insured's knowledge or consent, in an unsigned application filled out by the insurer's agent, do not bind the insured unless he or she is charged with knowledge thereof."). In Bristol v. Comm. Union Life Ins. Co. of America, the Connecticut Supreme Court held that an insurer could not rescind a policy based on a misrepresentation in an application form that was filled out by the insurer's agent, where the insured "never independently ratified or adopted" the statements in the form. 560 A.2d 460, 464 (Conn. 1989). Here, unlike in Bristol, Mr. Quiroz can be said to have made a misrepresentation because his agent submitted the application.

---

957, 963 (Conn. 1991). Lower courts have applied the same principles in cases involving other types of insurance, including fire insurance. See Quincy Mutual Fire Ins. Co. v. Nurkovic, 2009 WL 1607735, 47 Conn. L. Rptr. 830 (Sup. Ct. Conn. 2009) (fire insurance); Danbury Ins. Co. v. Ginnetti, No. 302CV2097(RNC), 2004 WL 2009281 (D. Conn. Aug. 5, 2004) (homeowner's insurance).

4

It is undisputed that Mr. Quiroz was "using the services" of Mr. Jimenez to "procure insurance" for the insured property. Quiroz's R. 56(a)(2) Statement ¶ A3, ECF No. 58. Jimenez contacted Rivera, who "had an agency relationship with" Republic Franklin. Id. at ¶ A10. Under these facts, Jimenez was Quiroz's agent. In Georgia Cas. & Sur. Co. v. Valley Wood, Inc., a Georgia appellate court held that when an agent is "authorized to procure insurance on behalf" of the insured, the insured can be bound by misrepresentations contained in an unsigned application form. 783 S.E.2d 441, 443 (Ga. Ct. App. 2016), reconsideration denied (Apr. 14, 2016), cert. denied (Oct. 31, 2016). This is consistent with Connecticut law. Cf. New York Life Ins. Co. v. Rigas, 168 A. 22, 23 (Conn. 1933) (holding that, under New York law, insured was estopped from claiming he never signed insurance application when he accepted policy, paid premiums and application was "attached to and made a part of the policy"). Quiroz's agent submitted an application on his behalf, Republic Franklin accepted the application and Quiroz (presumably) began paying premiums. See Quiroz's R. 56(a)(2) Statement ¶¶ A11, A14, A15, ECF No. 58. Under these facts, Quiroz "independently ratified or adopted" the application form through his agent.

III.

Because Quiroz can be said to have "made" a misrepresentation, Republic Franklin can validly rescind on that

5

basis but only if the misrepresentation was "known by the assured [or his agent] to be untrue when made." Middlesex Mut. Assurance Co., 52 F.3d at 691. In Connecticut, "'[i]nnocent' misrepresentations - those made because of ignorance, mistake, or negligence - are not sufficient grounds for rescission." Pinette, 52 F.3d at 408 (citing Middlesex Mut. Assurance Co., 590 A.2d at 963). An individual's misrepresentation can be "innocent" when he "does not know that the information he is providing is false" or he is "justifiably unaware of the answer's falsity and had no actual or implied knowledge of its existence." Cont'l Cas. Co. v. Morris I. Olmer, LLC, No. 3:08-CV-805 CFD, 2010 WL 3257673, at *4 (D. Conn. Aug. 10, 2010) (citations omitted).

Knowledge is imputed when an insured signs the application form. See Pinette, 52 F.3d at 410 ("[A] person may not claim that a misrepresentation is 'innocent' solely because the person failed to read the application before signing it."). But in this case, the application form was not signed. Republic Franklin's Rule 56(a)(2) Statement ¶ A18, ECF No. 62. Republic Franklin must therefore show that either Quiroz or his agent, Jimenez, actually was aware that the information provided in the application was untrue.[2]

---

[2] The signature on an application performs two functions: (1) affirming that the application was in fact submitted by the applicant, and (2) affirming that the statements in the application are accurate. Quiroz's agency relationship with Jimenez might satisfy (1), but (2) is not satisfied if neither of

The parties dispute who knew what when. Republic Franklin contends that "Mr. Jimenez explained to Mr. Quiroz the importance of owner occupancy on the type of insurance he could purchase"; "Mr. Quiroz told Mr. Jimenez that [the property] was his residence"; and "Mr. Jimenez discussed the Republic-Franklin application with Mr. Quiroz, including that the property . . . was owner-occupied." Republic Franklin's R. 56(a)(1) Statement ¶¶ 4, 5, 12, ECF No. 53. Quiroz contends that he told Jimenez he did not occupy the property, he did not see the application before the policy was issued, and he was never told or became aware that the policy required him to reside at the property. Quiroz's R. 56(a)(2) Statement ¶¶ B1, B3, B5, ECF No. 58. The parties do not dispute whether "Jimenez forgot to have Quiroz sign [the application] when he faxed it to Rivera" or that "[a]t no time did Jimenez read the Homeowner Application to Quiroz before he signed it." Republic Franklin's Rule 56(a)(2) Statement ¶¶ 18, 28, ECF No. 62.

Under the disputed and undisputed facts, a reasonable jury could decide Quiroz did not make a knowing misrepresentation, either directly or constructively through his agent. If a jury were to credit Jimenez, it would have to find that Quiroz concealed the occupancy status and almost certainly did so

---

them knew the application included a false statement about owner occupancy.

7

knowingly.  See Jimenez Deposition 23-25, ECF No. 53-2 (stating that he explained how "owner occupied property is quoted differently . . . [s]everal times" over the years and discussed what type of coverage he needed at the property before submitting the application to Republic Franklin).  But if a jury were to credit Quiroz and discredit Jimenez, it could conclude that Jimenez not only "forgot" to have Quiroz sign the application but also "forgot" certain facts related to him by Quiroz.  See Cont'l Cas. Co., 2010 WL 3257673, at *1 (denying summary judgment when lawyer testified he failed to disclose pending lawsuits to malpractice insurer because he "didn't remember them or ... didn't think about them, not because [he] attempted to mislead").  Jimenez stated in his deposition that Quiroz told him about his other property, where Quiroz did reside, which Jimenez "eventually quoted as well as a rental."  Jimenez Deposition 23, ECF No. 53-2.  It is possible Jimenez simply mixed-up these two properties when he submitted the application.  Indeed, Jimenez's testimony regarding the apparent mix-up tends to negate any nefarious motive on Quiroz's part because even if he paid a reduced rate on the property at issue here, he apparently paid a higher rate on the other property, which is owner occupied.  Alternatively, a jury could discredit both Quiroz and Jimenez and find that Jimenez did not ask, and Quiroz did not volunteer, that the property was not owner occupied.  In that case, a jury could

8

find that Quiroz did not make a knowing misrepresentation because he was not aware it was a question on the form, and Jimenez did not make a knowing misrepresentation because he filled out the form absent-mindedly or simply assuming Quiroz lived at the property. In any case, I think a reasonable jury could find an innocent misrepresentation.

IV.

A misrepresentation in an insurance application is material "when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." Pinette, 52 F.3d at 411 (citing Davis Scofield Co. v. Agricultural Ins. Co., 145 A. 38, 40 (Conn. 1929)). Generally, "matters of special inquiry, such as questions requiring a 'yes' or 'no' answer, are conclusively deemed material." Nw. Mut. Life Ins. Co. v. Gil, No. CIV.A. 3:07-CV-00303, 2009 WL 276086, at *4 (D. Conn. Feb. 5, 2009), aff'd, 351 F. App'x 515 (2d Cir. 2009) (citing State Bank & Trust Co., 145 A. at 566). Here, the parties do not dispute that owner occupancy status on the application form was the subject of a "box" that "was checked indicating that the Property was [Quiroz's] current residence." Republic Franklin's R. 56(a)(2) Statement ¶ 13, ECF No. 62. Under the "special inquiry" rule, this statement is material as a matter of law.

9

V.

Shellpoint contends that it is entitled to coverage under the policy, even if the policy can be rescinded as to Mr. Quiroz. Republic Franklin has demonstrated that the policy's mortgage clause is "open" and, as a result, Shellpoint has no greater right to coverage than Mr. Quiroz.  Shellpoint argues that it is entitled to coverage in any event because it did not receive timely notice of cancellation.  Whether Republic Franklin was obliged to provide Shellpoint with such notice and, if so, whether it failed to do so are matters that are not well-developed in the record.  Because the record is less than clear, summary judgment will not be granted to Shellpoint.

VI.

Accordingly, the motions for summary judgment are denied. So ordered this 30th day of September 2017.

/s/
Robert N. Chatigny
United States District Judge